# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PAULINE DALE STONEHILL** ) | |
| Co-Executor and Co-Special Administrator ) | |
| Estate of Harry S. Stonehill ) | |
| Calle Guillermo Tell 14 ) | |
| Churriana 29140 Malaga, ESP ) | |
| **Plaintiff** ) | |
| ) | Civil Action No. _____ |
| v. ) | |
| ) | |
| **FEDERAL BUREAU OF INVESTIGATION** ) | |
| 935 Pennsylvania Avenue, N.W. ) | |
| Washington, D.C. 20530-0001 ) | |
| **Defendant** ) | |
| _____ ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Pauline Dale Stonehill, Co-executor and Co-special administrator of the Estate of Harry S. Stonehill ("Stonehill"), by and through her undersigned counsel, brings this action against Defendant Federal Bureau of Investigation ("FBI") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). As grounds therefor, Plaintiff alleges as follows:

## NATURE OF ACTION

1. This is an action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") to obtain agency records that the FBI has improperly withheld from Mrs. Stonehill, the Co-

executor and Co-administrator of her husband's estate. The withheld documents relate to the Government's role in the investigation and wiretapping of Stonehill, the subsequent illegal raids on his businesses in the Philippines in 1962 and the use of Stonehill's lawyer as a government informant.

2. In 1977, Stonehill filed an FOIA request with the FBI for all Stonehill related records. Four years later, on February 25, 1981, the Defendant furnished 962 of the 2248 pages of responsive documents, most of which were heavily redacted or withheld in full to protect claimed national security interests

3. In 1998, Stonehill's counsel filed a new FOIA request with the FBI for all records related to Harry S. Stonehill, Robert P. Brooks and the United States Tobacco Company including "all documents *relating to meetings between* Robert Hawley, an FBI agent attached to the United States Embassy in Manila, Robert Chandler of the IRS, Menhart Spielman, Colonel Lukban and/or the Philippine National Bureau of Investigation from December 1961 through July 1962." By letter dated June 22, 1999, the time frame of this request was expanded to December 1976.

4. In response to Stonehill's FOIA requests filed with the State Department and the FBI, documents were obtained which contained evidence that Robert Hawley ("Hawley"), the FBI Legal attaché in Manila, had testified falsely during his deposition. On April 23, 2000, Stonehill filed a Rule 60(b) motion to vacate the judgement based upon fraud on the Court.

5. On August 14, 2000, Stonehill's counsel filed a complaint in U.S. District Court for the District of Columbia (*Robert E. Heggestad v. FBI, et al.* ) to obtain documents withheld by the Defendant. On March 29, 2001, the parties filed a Stipulated Order of Dismissal dismissing the action against the FBI with prejudice.

6.      During more than a decade of inordinately protracted FOIA and Rule 60(b)(6) litigation- -in which progressive "discoveries" of documents by the IRS led **five documents** to become **eight boxes of documents**, to become **ninety-four boxes of documents**--critical documents were unexpectedly "lost."  At the end of a two-year review process, the IRS reported that the box containing the Tax Division attorney notes for preparation of the Chief Counsel's May 20, 1966 memorandum, detailing government participation in the raids and wiretapping, was missing.  Similarly, documents stored in a Criminal Division safe, which Tax Division attorneys in the Rule 60(b) proceeding were allowed to access, were suddenly lost one year after the Tax Division insisted that Stonehill file a new FOIA request with the Criminal Division to obtain access to the same documents.

7.      On May 18, 2001, after the IRS notified Stonehill's counsel that 8 boxes of Stonehill documents had been located,  Stonehill filed a motion to stay the Rule 60(b) proceedings pending the review of the newly discovered documents. The Government opposed the motion and on August 28, 2001 the Court denied the motion to stay and further denied Stonehill's Rule 60(b) motion.  The District Court found that Stonehill had not presented evidence that Hawley lied during his deposition and that their "newly discovered documents" showed "at worst that Hawley, testifying without his files, made minor mistakes about the precise timing of events that occurred five years before he was deposed."

8.      On March 20, 2002, during the appeal of the District Court's decision, Harry Stonehill died;  his wife, Pauline Stonehill was substituted as the Co-Representative and Co-Administrator of the Estate of Harry S. Stonehill in the rule 60(b) litigation.  On December 19, 2002, the Ninth Circuit remanded the case and directed the District Court to help Stonehill obtain additional relevant documents.

9. During the eight years following the Ninth Circuit remand, documents were slowly produced during the course of IRS-FOIA litigation and as a result of limited discovery ordered by the District Court in the Rule 60(b) proceeding. The documents revealed U.S. planning and participation by the IRS, the CIA and the FBI (under the direction of J. Edgar Hoover) in both the raids and the wiretapping.

10. The documents also revealed that the initial IRS investigation of Stonehill, which had been closed in 1958, had been reopened in April 1960 following the receipt of information from Stonehill's Honolulu attorney, William Saunders ("Saunders"). Saunders provided the IRS with Stonehill's confidential financial information prior to and after the raids and appeared in Manila in 1962 to represent Stonehill during the initial investigation.

11. Following the inadvertent release of a small portion of CIA redacted documents from the IRS, DOJ and the FBI, Stonehill also learned that the Philippine National Bureau of Investigation ("NBI") agents, Domasco Nocon ("Nocon") and Jose Lukban ("Lukban"), who led the Philippine investigation and the raids on Stonehill's businesses, were likely CIA agents and that the FBI and the CIA had assisted the NBI in wiretapping Stonehill.

12. On July 14, 2010, the District Court again denied Stonehill's motion to vacate the judgment and on September 8, 2010, Stonehill appealed the District Court's decision.

13. On September 28, 2011, the Court of Appeals for the Ninth Circuit issued its decision denying Stonehill's Rule 60(b) motion, stating that "although the evidence uncovered by the Taxpayers shows some misconduct on the part of the government, it is insufficient to demonstrate fraud on the court." *United States v. Stonehill*, 650 Fed. 3d 415 (9th Cir. 2011).

14. The Ninth Circuit found that: (1) the "documents uncovered by Taxpayers through their FOIA requests demonstrate that Hawley [the FBI Special Agent in charge of the

Stonehill investigation] lied in his deposition about his knowledge of the raid." *Id.* at 447-448; (2) the statements made to the court by John J. McCarthy, the attorney who represented the Government in the Stonehill investigation and litigation for more than two decades, "were not forthright. They concealed rather than revealed the true state of affairs known to the government." *Id.* at 446; (3) There was evidence that Damaso Nocon ("Nocon"), the Philippine National Bureau of Investigation ("NBI") agent who conducted the raid on Stonehill's companies "worked for the CIA, especially in connection with wiretapping activities…," but the "fact that Nocon, and perhaps Lukban (the NBI Director) at some point worked with the CIA does not make everything they did the action of the U.S. government for purposes of a suppression hearing." *Id.* at 448-449; and (4) Stonehill's lawyer William Saunders was an informant who cooperated with the government. *Id.* at 453-454.

15. The Ninth Circuit concluded that "the government's misrepresentations or false statements made by government witnesses or attorneys were on largely tangential issues and did not substantially undermine the judicial process by preventing the district court or this court from analyzing the case." *Id.*

16. On July 10, 2014, Bethany McLean, ("McLean"), an investigative journalist, filed two FOIA requests with the FBI seeking information about: (1) Jose Lukban (the NBI Director), NBI agent Domasco Nocon and the NBI and (2) Stonehill and Menhart Spielman (a Stonehill employee who acted as a government informer). Section Chief David M. Hardy ("Hardy") responded to McLean on August 5, 2014 claiming that no documents could be located pertaining to Nocon or Lukban; documents related to the NBI were produced over a three-year period, with many documents withheld in their entirety or with significant redactions. On November 24, 2014, Hardy informed McLean that the FBI had located approximately 3,792

pages of potentially responsive records to the Stonehill/Spielman FOIA request. Almost six years later, despite repeated requests from McLean to expedite the processing of her FOIA request, the FBI has yet to assign a disclosure officer to process these documents. On April 13, 2020, a new FOIA request was filed on behalf of Mrs. Stonehill by the undersigned counsel, requesting all documents related to Nocon, Lukban and Saunders; on April 27, 2020, a second FOIA request was filed for all documents concerning the NBI; and on April 29, 2020, a third FOIA request was filed for all documents related to Menhart Spielman.

17. The FBI's responses to Mrs. Stonehill's FOIA requests are part of the decades-long effort by the Government to delay and to prevent disclosure of documents which show government misconduct during the original Stonehill investigation and its participation in the subsequent raids which were precipitated by a January 10, 1962 American Embassy cable that said:

> It is imperative for American Interests in the Philippines that some way be found to get Stonehill out of the Philippines and break his stranglehold here…the only attack that can be made on Stonehill is through the IRS.[1]

Seven weeks later, on March 2, 1962, seventeen Stonehill corporations were raided by the Philippine National Bureau of Investigation ("NBI") and Stonehill was arrested and deported. FBI documents reflect that J. Edgar Hoover personally oversaw the raids and related strategy. In connection with the original underlying litigation, the FBI advised the DOJ there is "much in the file of an **administrative** and security nature that we would not want defendants to see." Only as recently revealed by a scholarly book on J. Edgar Hoover, has it been disclosed that he had developed a scheme to divide the investigative file into two parts, with one part labelled

---

[1] Memorandum dated January 10, 1962 from Robert Chandler, Revenue Service Representative in Manila to C. I. Fox, Director, IRS Office of International Operations.

"administrative," in which he had agents place illegal wiretapping evidence and the like, so as to avoid having to disclose it as part of the "investigation file."[2]

18.     As detailed herein, over several decades and continuing to the present, the efforts of Mr. Stonehill, when he was alive, and his wife as his executor, to obtain vital documents from the federal government through various FOIA requests have been thwarted through various government wrongdoing, apparently ranging from mere negligence and sloth, to false statements and representations to various courts, to outright apparent document destruction of incriminating documents, to which we believe culpable individuals were given access.

## JURISDICTION AND VENUE

19. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552 (a)(4)(B) and 28 U.S.C. §1331.

20.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (e).

## PARTIES

21.     Plaintiff is the Co-executor and Co-special administrator of the Estate of Harry S. Stonehill, and she resides at Calle Guillermo Tell 14, Churriana 29140, Malaga, Spain.

22.     The Defendant is an agency of the United States and is headquartered at 10th and Constitution Avenue, N.W., Washington, DC 20530. Defendant has possession, custody and control of public records to which Plaintiff seeks access.

---

[2] J. EDGAR HOOVER, The Man and the Secrets, Curt Gentry at 374.

**STATEMENT OF FACTS**

**The Original Proceedings**

23. In 1962, Philippine authorities conducted warrantless raids of Stonehill's Philippine enterprises.

24. The Philippine government then provided seized documents to the United States, and the United States used these materials to commence both civil and criminal tax proceedings against Stonehill.

25. The criminal proceedings in New York ended in an acquittal following a bench trial.

26. In the civil tax litigation, Stonehill moved to suppress the seized documents on the theory that the United States, acting without a warrant, actually instigated and helped plan the raids in violation of the Fourth Amendment to the United States Constitution.

27. The Government vehemently denied these charges to both the United States District Court of California and the United States Court of Appeals for the Ninth Circuit.("Ninth Circuit")

28. After producing a handful of documents related to Government instigation and participation in the raids during the suppression hearings in 1967, the Government further represented to the Ninth Circuit that "[e]very piece of relevant correspondence, memoranda, cablegrams etc. whose existence has been identified in either the extensive discovery conducted on behalf of the taxpayers or at the trial had been produced."

29. In reliance on the Government representations, a divided Ninth Circuit panel found that the Government did not instigate or help plan the raids, which they acknowledged

would be illegal if instigated by the U.S. *See Stonehill v, United States*, 405 F. 2d 738 (9th Cir. 1968)

30. The dissenting judge concluded that, despite Government representations otherwise, the evidence indicated that the Government instigated and helped plan the raids without a warrant, thereby rendering the search illegal. See *id*. (Browning, J., dissenting).

31. The Government ultimately obtained a tax judgment against Stonehill in 1984 and receivership proceedings continued for twelve years thereafter. The Government economically destroyed Stonehill.

### July 10, 1998 FOIA Request to Federal Bureau of Investigation

32. On July 10, 1998, Plaintiff's counsel filed an FOIA request with the FBI on behalf of Harry S. Stonehill requesting all records:

> ***pertaining to Robert Brooks, Harry S. Stonehill and United States Tobacco Company***, during the period January 1958 thru 1963, **including** but not limited to:
>
> (1) all **documents relating to meetings** between Robert Hawley, an FBI agent, Robert Chandler of the IRS, Menhart Spielman, Colonel Lukban and /or the Philippine National Bureau of Investigation **from December 1961-July 1962;**
>
> (2) all documents related to Menhart Spielman. (Attached hereto as Exhibit 1)

33. On March 8, 1999 and June 7, 1999, the FBI produced responsive documents; numerous documents were withheld in full or produced with significant redactions based on claims of national security.

34. By letter from Plaintiff's counsel dated June 22, 1999, the time frame of these requests was expanded to December 1976.

35. On August 6, 1999, following an appeal filed by Plaintiff's counsel on July 14, 1999, the FBI produced additional documents with extensive redactions. On February 16, 2000, the FBI notified Plaintiff's counsel that the Department Review Committee had determined not

9

to declassify any information regarding the redactions in the FBI documents or other withheld documents.

36. On August 14, 2000, Stonehill's counsel filed a complaint for Declaratory and Injunctive Relief in U.S. District Court for the District of Columbia (*Robert E. Heggestad v. FBI, et al.*).

37. Following the rereview of withheld and redacted documents, and the rerelease of selected documents, on March 29, 2001, the parties filed a Stipulated Order of Dismissal dismissing the action against the FBI with prejudice.

### Ninth Circuit Court of Appeal's Remand

38. In December 1998, IRS disclosure officer Stephen Fletcher claimed that only five Stonehill documents could be found after a "thorough research of all available records under the jurisdiction of the Assistant Commissioner (International)."

39. On March 15, 2001, Fletcher admitted to Stonehill's counsel that documents responsive to Stonehill's 1998 FOIA request were in fact located and still available at the Office of the Associate Chief Counsel, International Operations Branch. Stonehill filed a new FOIA request on March 15, 2001 and on May 18, 2001, the IRS advised Stonehill's counsel that 8 boxes of documents related to the Stonehill case had been located in the Associate Chief Counsel's Office.

40. The District Court refused to grant Stonehill's motion to stay the proceeding pending the review of eight newly discovered boxes of IRS documents and also denied Stonehill's Rule 60(b) motion to set aside the judgment on August 28, 2001. The Court found that Hawley, the FBI legal attaché in Manila, had not lied during his deposition about his

knowledge of the raids. On appeal, the Ninth Circuit remanded the case on December 19, 2002 and directed the District Court to help Stonehill obtain additional relevant documents.

### Ninth Circuit September 28, 2011 Decision

41.     During the eight years following the Ninth Circuit remand, documents were slowly produced during the course of IRS-FOIA litigation and as a result of limited discovery ordered by the District Court in the Rule 60(b) proceeding.

42.     On July 14, 2010, the District Court denied Stonehill's motion to vacate the judgment and on September 8, 2010, Stonehill appealed the District Court's decision.

43.     On September 28, 2011 the Court of Appeals for the Ninth Circuit issued its decision denying Stonehill's Rule 60(b) motion. *United States v. Stonehill*, 650 Fed. 3d 415 (9th Cir. 2011).

### 2014 FOIPA Request 1285273-000 (1285273-1)

44.     On July 10, 2014, Bethany McLean ("McLean), an investigative journalist, filed an FOIA request for all records related to Harry S. Stonehill and Menhart Spielman, from January 1, 1957 thru January 1, 1974 including but not limited to all records related to NBI Director Jose Lukban and NBI agent Damaso A. Nocon.

45.     On August 5, 2014, FBI Section Chief David Hardy ("Hardy") acknowledged receipt of the request for documents related to Stonehill (FOIPA Request No. 1285273-000) and documents related to Spielman (FOIPA Request No.: 1285292-000).

46.     On November 24, 2014, Hardy informed McLean that 3,792 pages of potentially responsive Stonehill documents had been located. *See* November 24, 2014 letter from D. Hardy to B. McLean, attached hereto as Exhibit 2

47. On January 13, 2015, Hardy informed Mclean that no responsive documents could be located related to Menhart Spielman. *See* January 13, 2015 letter from D. Hardy to B. Mclean, attached hereto as Exhibit 3.

48. On February 19, 2015, McLean provided Hardy with an FBI AIRTEL dated March 15, 1966 identifying Spielman Bureau file 64-46933.

49. On March 17, 2015, Hardy advised McLean that the material requested pertaining to Spielman under FOIPA Request No.: 1324224-000 would be processed under FOIPA 1285273-001(Harry Stonehill).

50. On June 29, 2015, February 6, 2016 and October 13, 2016, McLean wrote to the Defendant and asked for a status report and an estimated date of when the FOIA request would be processed.

51. On February 4, 2016, H. Early provided Mclean with an estimated completion date of May 2016

52. On October 20, 2016, Hardy advised Mclean that the case was in the "perfected backlog."

53. On Nov 30, 2016, D. Sobonya advised Mclean that the estimated date of completion was May 29, 2017.

54. On June 22, 2017, L. Ramsey advised McLean that the request was awaiting assignment of a disclosure officer and it would be delayed until December 2017.

55. On July 26, 2017, McLean filed an appeal objecting to the delay and requested expedited consideration. On September 12, 2017, P. Jones acknowledged receipt of the appeal.

56. On January 16, 2018, February 14, 2018 and April 1, 2019, McLean requested status reports and asked when a disclosure analyst would be assigned .

57. Almost six years after McLean's FOIA request was filed and almost five and one-half years after responsive documents were identified by the Defendant, the Defendant has refused to assign a disclosure analyst to process FOIPA 1285273-1. (*See* FBI Records: The Vault, Status of FOIPA 1285273-001, 5/27/20, attached hereto as Exhibit 4)

### NBI/Lukban/Nocon FOIPA Request

58. On July 10, 2014, McLean filed an FOIA request which sought all records concerning Domaso (Danny) A. Nocon, the Philippine National Bureau of Investigation (NBI) and Jose G. Lukban (NBI) from the time period January 1, 1957 thru January 1, 1974.

59. On August 5, 2014, Hardy responded to McLean's request for information related to Domaso Nocon, (FOIPA Request No.: 1285352-00), stating that the FBI was unable to identify main file records responsive to the FOIA. (*See* August 5, 2014 letter from D. Hardy to B. McLean, attached hereto as Exhibit 5)

60. By separate letter, on August 5, 2014, Hardy advised McLean that the FBI was unable to identify main file records responsive to McLean's FOIA request for documents related to Jose G. Lukban. (FOIPA Request No. 1285372-00). (*See* August 5, 2014 letter from D. Hardy to B. McLean, attached hereto as Exhibit 6)

### NBI FOIPA Request (1285394-000)

61. On August 5, 2014, Hardy acknowledged receipt of McLean's request for all records related to the Philippine National Bureau of Investigation (FOIA Request No: 1285394-000).

62. McLean asked Hardy to advise her of the status of the FOIA request on February 19, 2015.

63. On January 28, 2016, Hardy notified McLean that: (1) 460 pages of responsive documents were reviewed and 384 pages of documents for the period February 11, 1957 thru August 28, 1962 were being released; 76 pages were withheld in their entirely; and (2) the FBI had referred information to the OGAs for review and for a direct response and was consulting with another agency. Exemptions (b)(6), (b)(7)(C), (b)(7)(D) and (b)(7)(C) were cited as a basis for deletions and for withholding documents in their entirety.

64. On March 7, 2016 McLean requested that Hardy inform her if any of the deleted pages or redactions related to Lukban or Nocon.

65. On March 25, 2016 McLean appealed Hardy's January 28, 2016 decision. The Appeal was denied on September 14, 2016.

66. On March 30, 2016, Hardy released 167 pages of the 256 pages that were reviewed.

67. On May 27, 2016, McLean appealed Hardy's March 30, 2016 decision to withhold documents in full or in part.

68. On June 30, 2016, two pages were released with IRS information redactions.

69. On August 29, 2016, McLean appealed the Defendant's June 30, 2016 decision.

70. On June 30, 2017, Hardy informed Mclean that 62 pages had been reviewed and 54 pages were released with redactions.

71. On August 24, 2017 McLean appealed Hardy's June 30, 2016 decision.

72. Mclean's appeal was denied on October 14, 2016.

### April 13, 2020 FOIA Request- Nocon, Lukban and Saunders

73. On April 13, 2020, the undersigned counsel filed a new FOIA request on behalf of Mrs. Stonehill, for all records related to Domaso Nocon, Jose Lukban and William W. Saunders

for the period January 1, 1957 thru January 1, 1974. The FOIA request, attached hereto as Exhibit 7, was received by the FBI on April 15, 2020.

74. As of the date of this Complaint, Plaintiff's counsel has not received a response to this request.

### April 27, 2020 FOIA Request- Philippine National Bureau of Investigation ("NBI")

75. On April 27, 2020, the undersigned counsel, on behalf of Mrs. Stonehill, filed a second FOIA request for all records relating to the NBI from the time period January 1, 1957 thru January 1, 1974, attached hereto as Exhibit 8. The FOIA request was received by the FBI on April 28, 2020. As of the date of this Complaint, the Plaintiff's counsel has not received a response to this request.

### April 29, 2020 FOIA Request-Menhart Spielman

76. On April 29, 2020, the undersigned counsel, on behalf of Mrs. Stonehill, filed a third FOIA request for records concerning Menhart Spielman from the time January 1, 1957 thru January 1, 1974. The FOIA request, attached hereto as Exhibit 9, was received by the FBI on April 30, 2020. As of the date of this Complaint, Plaintiff's counsel has not received a response to this request.

### Documents Requested in this Action

77. The documents related to Nocon, Lukban, the NBI, Saunders and Spielman, that Stonehill seeks to have the court compel production of, have already been or readily could be assembled by the government—the requests addressed herein are very focused, and the government has asserted no ground, much less good ground, for its continued failure to produce them - - thus necessitating this action.

78. Stonehill is not seeking to compel the production of Stonehill documents "*related to meetings* between Robert Hawley…, Robert Chandler…, Menhart Spielman, Colonel Lukban and/or the Philippine National Bureau of Investigation…" between December 1961 thru December 1976 or "documents from files related to Harry S. Stonehill referencing or related to Spielman" between December 1958 thru December 1976. These documents were responsive to Stonehill's July 10, 1998 FOIA request, and were the subject of the complaint for Declaratory and Injunctive Relief filed in U.S. District Court for the District of Columbia (*Robert E. Heggestad v. FBI, et al.*) on August 14, 2000.

79. Because Defendant has failed to comply with the time limit set forth in 5 U.S.C.§552(a)(6)(A)-(B), Plaintiff is deemed to have exhausted any and all administrative remedies with respect to her FOIA requests, pursuant to 5 U.S.C. §552(a)(6)(C).

## COUNT 1

### (Violation of FOIA, 5 U.S. C.§552)

80. Plaintiff realleges paragraphs 1-79 as if fully stated herein.

81. Defendant is unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. §552.

Plaintiff is being irreparably harmed by reason of Defendant's unlawful withholding of requested records, and Plaintiff will continue to be irreparably harmed unless Defendant is compelled to conform its conduct to the requirements of the law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court: (1) order Defendant to conduct a search for any and all responsive records to Plaintiff's FOIA requests, and demonstrate that it employed search methods reasonably likely to lead to the discovery of

records responsive to Plaintiff's FOIA requests; (2) order Defendant to produce, by a date certain, any and all non-exempt records responsive to Plaintiff's FOIA requests and a *Vaughn* index of any responsive records withheld under claim of exemption; (3) enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA requests; (4) grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C.§552(a)(4)(E); and grant Plaintiff such other relief as the Court deems just and proper under the circumstances herein.

Dated:  06/01/20

>Respectfully submitted.
>
>/s/ Robert E. Heggestad
>
>Robert E. Heggestad
>D.C. Bar No. 953380
>1747 Pennsylvania Ave., NW
>Suite 1250
>Washington, DC 20006
>(202) 733-6726
> robert@reheggestad.com